GUSTAVUS BUNGE et al., Respondents, v. GERHARD HENRY KOOP et al., Appellants.

Upon the breach of a contract between the parties, defendants became liable to plaintiffs in damages to the amount of $6,400, which amount was undisputed. Defendants being unable to pay, it was agreed that if they would borrow of their friends and pay the sum of $3,500, plaintiffs would settle and compromise, leaving it to defendants' honor to pay when they became able an additional sum, which, with the $3,500, would amount to seventy-five per cent of the claim. Defendants thereupon borrowed and paid to plaintiffs the $3,500.—*Held*, that there was no consideration for the agreement of compromise, and that plaintiffs were not concluded from suing and recovering the residue. The question is not affected by the fact that defendants received from the lenders checks for the amounts borrowed, which they delivered to plaintiffs in lieu of the money.

Where, prior to the time for the performance of a contract, one of the parties notifies the other that he will not perform, the latter can maintain an action for the breach without an offer of performance upon his part.

(Argued September 23, 1871; decided January term, 1872.)

APPEAL from judgment entered upon order of the General Term of the Superior Court of the city of New York, denying defendants' motion for a new trial, and directing judgment upon the verdict.

This action was to recover damages for breach of a contract made May 13, 1864, whereby the defendants agreed to deliver to the plaintiffs, at sellers' option, on or before the 31st day of July, 1864, exchange for 10,000 louis d'or thalers, lawful money of Bremen, at sixty days' sight, for the price of one dollar and thirty cents, lawful money of the United States, for each louis d'or thaler, and the plaintiffs claimed damages

to the amount of $6,400, admitting $3,500 had been paid thereon.

The defendants in their answer, among other things, alleged "that on or about the 30th day of July, 1864, said plaintiffs claimed and demanded from said defendants said sum of $6,400, which sum these defendants were wholly unable to pay, and thereupon said plaintiffs duly agreed, to and with said defendants, that, provided these defendants should and did induce their friends to raise and loan to said defendants the sum of $3,500, and would pay the same to said plaintiffs, that said plaintiffs would settle and compromise their alleged demand against said defendants for and upon receiving said sum of $3,500, to be raised as aforesaid, and would leave it entirely to the defendants' honor whether they should, at any time hereafter, pay said plaintiffs any further sum or amount; and, thereupon, under and in pursuance of said agreement, these defendants, at a great sacrifice and trouble, did borrow from their said friends the said sum of $3,500, and paid the same to said plaintiffs, with the full understanding and agreement that the plaintiffs should accept and receive the same as satisfaction of the said claim, leaving it entirely to the honor of said defendants to pay an additional sum, which, together with the said sum of $3,500, should make seventy-five cents on the dollar of the plaintiffs' alleged claim or demand, to be paid when defendants should be able so to do; and these defendants allege that the said agreement above specified, on the part and behalf of said plaintiffs, formed the inducement and consideration to the said friends of said defendants to loan and advance the said sum of $3,500 as aforesaid; and these defendants insist that they are not legally or justly indebted to said plaintiffs in any sum or amount whatever; and they deny that they ever promised to pay the said plaintiffs said sum of $2,900, or any sum or amount whatever, since the payment of said sum of $3,500, as aforesaid, which sum was received and accepted by said plaintiffs in settlement and compromise of their said claim and demand as aforesaid."

The action came to trial in January, 1866, before a judge and jury, and the plaintiffs gave evidence of the breach of the contract by the non-delivery of the exchange, and that their damages were $6,400. The defendants gave evidence tending to show the facts alleged in their answer, as above quoted.

The defendants, in their motion to nonsuit and in their requests to the court to instruct the jury, claimed that the alleged arrangement and compromise constituted a defence to the action; but the court directed the jury to find a verdict for the plaintiffs, which they did, and the defendants excepted.

The court directed the exceptions upon a motion for a new trial to be heard in the first instance at the General Term; and the motion having been made and denied, and judgment entered upon the verdict, the defendants appealed to this court.

*J. M. Van Cott* for appellants. Payment either before the day or at another place is a good consideration for a compromise. (Smith's note to Cumber. & Wane, 1 Leading Cases, 146.) The existing rule as to records is technical, and is departed from on slight distinctions. (*Kellogg v. Richards,* 14 Wend., 116; *Watkins v. Inglesby,* 5 J., 390.)

*Weeks & Foster* for respondents. The alleged agreement to compromise was without consideration. (*Higby v. N. Y. and Harlem R. R. Co.,* 3 Bos., 497, 504; *Cole v. Sackett,* 1 Hill, 517; *Muldon v. Whitlock,* 1 Cow., 306; *Hawley v. Foote,* 19 Wend., 516.) The payment in checks did not change the rule. (*Olcott v. Rathbone,* 5 Wend., 492.) There was no satisfaction; the award was not executed. (*Caston v. Hamilton,* 11 Barb., 149; *Mumford v. McPherson,* 1 J., 417; *The Brooklyn Bank v. De Grauw,* 23 Wend., 343; *Hawley v. Foote,* 19 Wend., 517.) The manner in which defendants procured the money did not change the question. (*Harrison v. Close,* 9 Johns., 448; *Seymour v. Minturn,* 17 J., 169; *Dedrich v. Leman,* 9 Johns., 333.)

EARL, C.   The defendants, under their contract, could perform by delivering the exchange on or before July 31, 1864. It so happened that the 31st day of July was Sunday. It is not important in this action to determine which was the last day upon which the defendants could tender performance—whether they could do it upon Sunday or Monday, or whether they were bound to do it upon Saturday. On the 28th or 29th of July, the defendants informed the plaintiffs that they could not perform, and this dispensed with any offer of performance by the plaintiffs on the 31st, or any other day. (*Crist* v. *Armour*, 34 Barb., 378.)

On the 28th day of July, the defendants informed the plaintiffs that they would not be able to deliver the exchange, and they, then entered into negotiation with the plaintiffs for a compromise of the damages, and finally, as there was evidence tendency to show, the arrangement set up in the answer was concluded, and on Saturday they paid the $3,500, agreeing to pay the balance, up to seventy-five cents on the dollar, when they should become able.

There was no consideration for the alleged agreement. In paying the $3,500, the defendants did no more than they were bound to do. The $3,500 was only a portion of the whole sum which they were liable to pay, and its payment could not therefore furnish a consideration for the agreement to take less than the balance due, or for extending time for the payment of such balance. (*Harrison* v. *Close*, 2 Johns., 448; *Dedrick* v. *Leman*, 9 Johns., 333; *Palmerton* v. *Huxford*, 4 Denio, 166.)

This was not the settlement of a disputed or doubtful claim. It is not so alleged in the answer. The answer assumed, and the parties in all stages of their negotiations assented, that the plaintiffs' claim for damages was $6,400; and the undisputed evidence upon the trial showed that it was so much. Hence the compromise could not be upheld as the settlement of a disputed or uncertain claim. Neither was the $3,500 paid in advance, so as thus to furnish a consideration for the agreement. Such a consideration was not thought of by the

parties, and was not claimed in the answer nor upon the trial. The defendants had the option to fix the day of performance at any time before the 31st day of July, and they fixed it for all purposes on the 29th or 30th of July, and treated the contract as ended, and their liability to damages as fixed and certain.

The defendants alleged in their answer, and gave evidence tending to show, that it was the agreement that the compromise and extension should be effected, if they could induce their friends to raise for and loan to them the $3,500. They proved on the trial that to enable them to make the compromise their friends loaned them $3,000, and that, with $500 of their own money, they paid the $3,500 to the plaintiffs.

This agreement to thus get the money from their friends was chiefly relied upon by the defendants in their answer and upon the trial as furnishing the new consideration for the compromise. I cannot assent to this claim. The money, when paid, was to belong, and in fact did belong, to the defendants. It was to be paid and was paid as their money. Suppose a debtor agreed to go to work and earn the money, or to dig for it in the earth, would this furnish a new consideration to uphold an agreement of the creditor to take less than his conceded due? In all cases, an embarrassed debtor must make some effort to procure the money to make a compromise, but no case can be found holding that the fact that he had agreed to make such effort, furnishes any consideration to uphold the compromise. The debtor is legally bound to pay, and it is utterly indifferent to the creditor where he gets the means to do it; that is, the matter of the debtor, and all his efforts, are expended in simply endeavoring to discharge a legal obligation. Hence the fact that the defendants agreed to induce their friends to loan them the money, and that they did induce them to loan it, furnishes no new consideration to uphold the compromise.

It matters not that the $3,000 which the defendants received from their friends was in checks, which they handed

over to the plaintiffs. If the plaintiffs had agreed to receive the notes of a third party, or any specific personal property, in payment and satisfaction of their claim, it would have been fully paid and satisfied, no matter how small the value of the note or property was. But here the agreement, as alleged in the answer, and proved, was that the defendants should pay the $3,500 in money, and this they undertook to do in the checks; they were paid and received as money.

I have, therefore, reached the conclusion, upon the whole case, that the facts, as claimed by the defendants, do not constitute a defence to the balance claimed by the plaintiff, either as constituting payment or an accord and satisfaction; and the judgment must be affirmed, with costs.

Hunt, C. The answer alleges, in brief, that under the contract set forth, the plaintiffs claimed on the 30th of July, 1864, the payment of $6,400; that the defendants are unable to pay the same; that it was then agreed that if the defendants would induce their friends to raise and loan to them the sum of $3,500, and the defendants should pay the same to the plaintiffs, the plaintiffs would compromise their alleged demand upon receiving that sum, and leave it to defendants' honor whether they should thereafter pay any further sum; that therefore, in pursuance of such agreement, at a great sacrifice, the defendants did borrow from their friends the sum of $3,500 and paid the same to the plaintiffs, with the agreement that the same should be accepted in satisfaction of the claim, leaving it to the defendants' honor to pay an additional sum, which, together with the $3,500, should make seventy-five cents on the dollar of the plaintiffs' demand, to be paid when the plaintiffs should be able to do so; that the money was loaned to them by their friends upon the inducement and consideration above mentioned.

In my judgment, this answer sets forth no defence to the action. It is based upon the fallacious idea that the manner and terms upon which the defendants obtained the $3,500 can make the payment of a less sum than the admitted debt a good

accord and satisfaction. Two well-settled principles show the unsoundness of this theory. 1. A debt of $1,000 from A. to B. cannot be discharged by the payment of a less sum, nor will same be an accord and satisfaction, however positive the agreement to that effect may be. There is no consideration for such an agreement, and nothing short of a formal release will produce a discharge of the debt (*Cole* v. *Sackett*, 1 Hill, 517; *Muldon* v. *Whitlock*, 1 Cow., 306; *Hawley* v. *Foote*, 19 Wend., 516.) The general rule is not denied.

2. The money, when borrowed from the friend of the defendants, instantly became the property of the defendants. They borrowed it, and it was theirs. Its possession for an hour or a minute made it as certainly their own as if they had held it for a month or a year. If they had deposited the borrowed checks to their own credit in bank, and paid the plaintiffs in their own check or in bank currency, the transaction would have been perfectly correct toward the lenders and the same to the plaintiffs. The payment to the plaintiffs from the specific funds receive, or from other sources, cannot affect the rights of any one. The defendants, then, with their own money, compromise their debt with the plaintiffs; and when, where or how they supplied their funds or credit does not enter into the consideration of the case.

The principle that the pleading is to be construed most strongly against the pleader is useful in this case. (*Slocum* v. *Clark*, 2 Hill, 475; *Ferriss* v. *N. A. F. I. Co.*, 1 Hill, 71.)

The answer alleges that the plaintiffs, on the 30th of July, 1864, "claimed" from the defendants the sum of $6,400, and it is again called "the alleged demand" of $6,400. It is nowhere averred in the answer that this sum of $6,400 was not actually due to the plaintiffs. The undisputed testimony on both sides, including the evidence of one of the plaintiffs and of one of the defendants, shows this to have been the actual amount due upon breach of the contract to deliver exchange. We may, therefore, safely dispose of the case as if the answer had stated that the sum of $6,400 was justly due to the plaintiffs, and that the arrangement was made for the

satisfaction thereof by the payment of $3,500, as already set forth.

In his additional points, the appellants' counsel concedes that if the allegations of the answer do not set up a good accord executed, the verdict is right and the judgment must be affirmed. Upon the view I have taken, such must be the result.

All concur. Judgment affirmed.