cution and delivery of the mortgages by the new corporation upon the property acquired by it, and the issue of bonds to represent in whole or in part the interest of the certificate holders, in no way violate the bondholders' agreement, because there is nothing therein contained which restricts, or was intended to restrict, the power of the new corporation in this respect. The agreement, it will be observed, left indefinite the nature of these interests and the power of the committee with reference thereto. Rev. St. Me. c. 46, § 11. And the mortgages provided for in the agreement, and as executed and delivered, are in no way in conflict with the laws of Nebraska, so far as appears. The statutes of that state, offered in evidence, relate only to railroad and union depot companies. Indeed, the statutes of Nebraska, unless there be some special provision prohibiting the execution of such mortgages, could have no effect upon the question, since the power of the corporation to manage its property must be determined by, and depend upon, the laws of the state under which it came into existence.

Other questions are raised by the plaintiffs, but it does not seem to be necessary or profitable to consider them. The situation is this: A new corporation, formed under the proposed plan, has received a conveyance of the property in question, upon which it has executed, in accordance with the laws of the state under which it was incorporated, the mortgages sought to be set aside. These mortgages have been delivered and recorded in the state where the property is located, and the corporation is now in the actual possession and operation of the waterworks referred to. The securities of the new company have been issued and distributed among the holders of surrendered certificates representing upwards of $3,300,000 in amount of the bonds which have already been used in paying for the property purchased. The owners of these bonds, or those who have succeeded to their interests, have not only acquiesced in, but, so far as the evidence discloses, approved of, the acts of the committee in making the purchase. And yet these plaintiffs, representing, at most, but 58 certificates out of 3,569, ask to have the approval of such a large majority set aside, and the whole proceeding declared illegal and void. This a court of equity, under the facts disclosed, ought not to do.

It follows that the complaint should be dismissed, with costs. Complaint dismissed, with costs.

---

## McMANUS v. WESTERN ASSUR. CO.

(Supreme Court, Trial Term, Kings County.    January 7, 1898.)

1. INSURANCE—PLEADING—CONDITIONS—PERFORMANCE.
    In an action on an insurance policy, the plaintiff must allege and prove a compliance with the conditions precedent in the policy.

2. SAME—GENERAL DENIAL.
    A general denial is sufficient to put in issue such compliance with conditions precedent as it is necessary to allege in the complaint.

3. SAME—CERTIFICATE OF MAGISTRATE.
    Where a policy of insurance provides that the insured should, "if required," furnish a certificate of the disinterested magistrate living nearest

the place of the fire, etc., the furnishing of such certificate is not a condition precedent to a suit, and the question of compliance therewith is not put in issue by a general denial of the complaint, being a matter of affirmative defense.

4. SAME—PROOF OF LOSS.

A defense to a suit on an insurance policy that the "affidavit" in the plaintiff's proof of loss was not "signed by the insured" is not tenable, when the only requirement to that effect in the policy was that there should be furnished a "statement signed and sworn to by the insured."

5. SAME—CERTIFICATE OF NOTARY.

Where an insurance policy required that the proof of loss should be sworn to before the notary nearest the place of the fire, a certificate to a proof of loss which contains no venue is fatally defective.

6. SAME.

Where the oath of an insured to her proof of loss was not validly certified, in that it contained no venue, the subsequent affidavit of the notary before whom it was taken will not cure the defect.

7. SAME—WAIVER OF PROOFS.

A policy "on the property of the assured or any member of the household" provided, in case of loss, for a statement "signed and sworn to by said insured." After a loss of such property, a proof was sent, but was not properly sworn to by the insured. The company notified insured of this defect, and also insisted that each member of the household swear to the schedule of his own property, and added that it thereby rejected the proofs of loss sent in. Held, that this requirement, differing from the one contained in the policy, dispensed with the provisions of the policy for proofs of loss.

8. SAME—WAIVER OF APPRAISAL.

After a loss the insured, in a ·letter, informed the company, which transacted its business in the town where the loss occurred, that she objected to the appraiser appointed by the company, and stated the grounds of such objections. The company made no response, and suit was brought 21 days thereafter. Held, that the question whether the company, by its delay, waived the appraisal, was for the jury.

9. SAME—PARTIES TO ACTION.

When a policy is "on the property of the insured or any member of the household," an action to recover for a loss of the property of the assured, and also of other members of the household, is properly brought in the name of the assured alone.

10. PARTIES—DEFECT—MOTION TO DISMISS.

A defense that there is a defect of parties plaintiff cannot be raised by a motion to dismiss for variance, under Code Civ. Proc. §§ 498, 499, which provides that, where a ground for demurrer does not appear on the face of the complaint, objection may be taken by answer, and, if not so taken, it will be deemed to be waived.

11. INSURANCE—PROOF OF LOSS.

Where a policy requires that proofs of loss should state "the cash value of each item thereof," the company has no right to demand that it state the cost price.

12. SAME—INVENTORY.

Where a requirement in a policy that insured shall "forthwith" after loss make an inventory, "stating the quantity and cost of each article, and the amount claimed therein," is confined by the terms of the policy to damaged articles, there is no requirement that it be made part of the proofs of loss as to articles totally destroyed.

Action by Ann McManus against the Western Assurance Company to recover on a policy of fire insurance. Judgment for plaintiff, and defendant moves for a new trial. Motion denied.

The complaint alleges the insurance of the plaintiff by the defendant by its policy issued to her to the extent of $5,000 on household furniture and other

personal' property; its destruction and damage by fire to a greater amount than the said sum on March 29, 1896; that on April 9, 1896, the plaintiff duly served proofs of loss on the defendant; and then generally, "that she has complied with all the other conditions of the said policy on her part." The answer is a general denial only. The policy in so many words insures the plaintiff "on household furniture," including many enumerated heads or classes, "the property of the assured, or any member of the household, while contained in the" dwelling described, in the city of New York. The policy provides that if fire occur the insured "shall give immediate notice of any loss thereby in writing to this company," and also within 60 days after the fire "shall render a statement to this company, signed and sworn to by said insured," stating among other things "the interest of the insured and of all other persons in the property; the cash value of each item thereof and the amount of loss thereon"; and also, "if required," furnish a certificate of the disinterested magistrate or notary "living nearest the place of fire," stating that he has examined the circumstances, and believes the insured has honestly sustained loss to an amount which he is to state therein. The proofs of loss (served April 9, 1896) embrace complete lists of the articles damaged, their "sound value" being set down in a column under that head, and the "damages claimed" being set down in a second column so headed; and also of the articles destroyed, with their "sound value" set down under that head. No other figures are given therein. The household consisted of the insured and her husband, and their four adult children, two sons and two daughters, and the said lists were divided into schedules showing the articles belonging to each member of the household. All of them signed the certificate at the end of such complete inventory to the correctness thereof. Prefixed to such inventory is the general statement of the insured required by the policy. It refers to the inventory as showing the property damaged or destroyed and the amount of the loss. It is signed by the insured, and under her signature follows the following certificate of oath, not signed by her, and without venue, viz.:

"Personally appeared, Mrs. Ann McManus, signer of the foregoing statement who made solemn oath of the truth of the same.

"Witness my hand and official seal this eighth day of April, 1896.

"(134)          Michael A. Burdett, Notary Public, N. Y. Co."

By letter of the company to the insured and her agents (adjusters) dated April 18th, it notified the insured that "the papers offered as proofs of loss are defective," and "to serve new papers in proper form as follows," five objections being then enumerated, viz.: "First: The statement prefixed to the schedules is not properly verified. There seems to be no venue and no affidavits signed by the insured, but merely a certificate of the notary, that the insured 'made oath to the truth of the same.'" The second objection was, substantially, that there was no statement of who were the persons claiming as members of the household, under that clause of the policy, nor as to the specific property claimed by each, nor as to their relationship to the insured; the third was that there was "no statement as to the place of residence of the notary who certifies to the loss," and it is insisted "that the residence shall be stated, and also the fact that he is the notary 'living nearest' to the fire"; the fourth was that the schedules are not "verified," but merely have a certificate purporting to be signed by various persons. "We require that each schedule shall be duly verified by the person claiming to own the property. It must be sworn to be correct and to be his or her property"; and the fifth was, "The schedules do not show the cost of each article as required by the policy."

The plaintiff's agents responded by letter dated April 22d, saying, "We fail to discover any errors or omissions." To the first objection (that to the oath) they only say, "We refer you to the above-mentioned proof of loss." To the second, they give the names and relationship of the members of the household, and point out that the schedules show the property of each; to the third they give the address of the notary, and say he was the one living nearest to the fire; to the fourth they point out that all the members of the household signed the certificate to the correctness of the schedules; and to the fifth they say the assured were unable to "positively state the exact cost of every article." The company responded by letter of April 30th, insisting upon the objections made, and that the proofs of loss should be corrected to conform to them, and adding

that "we shall stand upon our legal rights and reject the proofs already offered. You have ample time to file proper proofs and on our part we insist that you do so." The plaintiff's attorneys wrote the company on April 24th, saying only that its letter of objections of April 18th had been referred to them, and that they would communicate in reference to it in a few days. On May 4th they simply wrote, "We trust that you will be advised to deal with the assured on a just and equitable basis without insistence upon purely technical and nonmeritorious objections." The company answered on May 5th that this characterization of the objections "does not deprive them of their full force or us of the right to insist upon compliance," and stated that efforts of the attorneys to procure "prompt action" with regard to them "will facilitate the settlement of your claim and will be appreciated by us." About May 11th plaintiff's agents filed with the company an affidavit by the notary (Michael A. Burdett) who made the certificate of oath of the insured to the proofs of loss, stating in substance that he was a notary public of the state of New York residing in the city of New York, and that on April 8th (the date mentioned in the said certificate) Mrs. Ann McManus, personally known to him as having made the proofs of loss, personally appeared before him, and subscribed the said proofs, "and was sworn before the said Michael A. Burdett on the 8th day of April, 1896, in the city and county of New York." By letter to the plaintiff's attorney, dated May 11th, the company acknowledges receipt of this affidavit, and says: "Detached statements in letters and papers do not supply the omission. We have no 'proofs signed and sworn to by the insured.' You claim that the insured are Ann McManus, Mary A. J. McManus, Hannah McManus, Thomas McManus, Sr., Thomas W. McManus and Nicholas P. McManus, and certain schedules claim that certain property covered by our policy belongs to each. We insist that each one shall swear to the list claimed for him as correct, and we demand that the oath shall be administered and certified as required by law, so that an action may be based thereon if found incorrect. We insist that you comply with the requirements of our letter of the 18th of April and, if your claim be just and honest, can see no reason for your attempted evasion." It adds that unless the proofs of loss be "amended and perfected, we shall reject those formerly sent in. In fact we do reject them and give you the opportunity to put in corrected proofs of loss if you desire. Such proofs must be sworn to by each of the insured in proper form as to the loss, value, cost and damage of each item claimed." It also says that the company is willing to go into an "immediate appraisal upon the distinct understanding that such action shall not be construed as any waiver of our rights to proofs of loss, as demanded by us"; and this reservation it repeated in subsequent letters, and kept good. By letter of May 13th plaintiff's attorneys respond that "the proofs of loss as filed are certainly sufficient"; and also: "We regret to say that it seems to us utterly impossible to meet your varying requirements, and having as we believe fully conformed to the requirements of the policy, which is the contract between the company and the insured, we can only express the hope that you may be advised to look at the matter from a different standpoint and pay the loss with that promptness which is characteristic of well established and properly managed companies." By letter of May 14th the company says in response: "We beg to say, however, that we have never made but one set of objections to the proof of loss. We may say that those were forwarded to Mrs. McManus in care of her adjusters, Messrs. Sonnenfield & Baird. In that letter we stated specifically just what we desired." This reference is to their said letter of April 18th. No other corrections of the proofs of loss were made or attempted. Annexed to the proofs of loss is a certificate by notary Michael A. Burdett of the facts and tenor prescribed by the policy to be certified by the magistrate or notary living nearest the place of fire. He does not certify his residence by street and number, or that he was "living nearest" the place of fire, but only that he was "residing in New York City contiguous to the property" where the fire occurred.

The policy provides that if the insured and the insurer disagree as to the amount of loss, it shall be ascertained by "two competent and disinterested appraisers," one appointed by each, they to submit their differences to an umpire who is to be selected by them before they begin the appraisal, the

award in writing of any two of them to determine the amount of loss; and it also provides that "the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss having been received by this company in accordance with the terms of this policy." Each party having appointed an appraiser (the insured on May 4th, and the insurer on May 14th) the insured through her agents objected to the company's appraiser by letter dated May 27th, the only reason given being in the general words, "as he is not competent to act under the terms and conditions of your policy." By letter of June 3d the company stated that it was unaware of any reason why he could not act, and asked that the objections be specifically stated. By letter of June 8th the agents of the insured stated the objections to be that the person named had acted as appraiser for the insurers "on numerous occasions, as well as for other companies, and is in fact depending on insurance companies exclusively for a livelihood"; and also that he was the "auctioneer, owner and manager" of a named company "that wrecks, assorts and disposes of property damaged by fire and taken by the insurance companies in order that their losses might be reduced thereby, being and in fact is an employé of insurance companies in general." No acknowledgment of or response to this letter having been sent, and nothing being done or proposed by the company, this action was begun on June 29th, and no appraisal was had.

Each of the said objections to the proofs of loss made in the said letter of the company of April 18th, and of the further objections that the action was prematurely brought before an appraisal, and also before the expiration of the 60 days after proofs of loss and ascertainment of amount of loss prescribed by the policy, and the objection that it did not appear that the certifying notary was the one living nearest the fire, was taken and insisted upon at the trial, in the motion to dismiss at the close of the plaintiff's case, and again at the close of the case, except the one that the relationship to the insured of the members of the household interested did not appear. The plaintiff's counsel insisted as to each of these objections, that it could not be taken on the trial for not having been pleaded as a defense. The defendant also moved to dismiss on the ground of variance between the complaint and the proof, in that only part of the property belonged to the plaintiff. The court sent the case to the jury on the questions of fact whether the company waived the defect of the oath in the proof of loss, whether its appraiser was disinterested, and whether it abandoned the appraisal; also on the question of damages.

Charles Wehle, for plaintiff.
George A. Stearns, for defendant.

GAYNOR, J. There is a question of pleading. Compliance by the plaintiff with each of the provisions of the policy for the furnishing of proofs of loss, and for the ascertainment of the amount of loss by agreement or by appraisal, was a condition precedent to plaintiff's right of action; and by the terms of the policy the company had 60 days after such compliance within which to pay. It follows that it was for the plaintiff to plead and prove such compliance. Under common-law pleading it was necessary for the plaintiff to particularly plead each condition precedent, and compliance therewith, or a good reason or excuse for noncompliance, such as that the defendant waived or prevented compliance. 1 Chit. Pl. (16th Am. Ed.) 332–337; Bogardus v. Insurance Co., 101 N. Y. 328, 4 N. E. 522. But under our system of pleading, such particularity is not necessary, a general allegation that the plaintiff "duly performed all the conditions on his part" sufficing to enable proof to be made of compliance or of excusable noncompliance. Code Civ. Proc. § 533. The complaint has this gen-

eral allegation.    The answer, which is a general denial only, was suf-
ficient to put in issue all that could be proved under the complaint.    A
general denial is always the scientific and sufficient way to put in issue
all that the plaintiff has necessarily pleaded and must prove, though it
seems to be growing very much out of mind in the profession.    The
defendant should never plead as a defense anything which is embraced
within the general issue raised by a general denial.    A defense can
consist only of new matter, viz., matter outside of such general issue.
Id. § 500.    If pleaders would bear in mind that the burden of proof
is on the defendant to make out a defense, they would be less prone
to plead as defenses facts which are not defenses, but within the gen-
eral issue.    Sometimes the courts take them at their word, and throw
the burden of proof on them for their so-called "defenses," and thus
enable the plaintiff to prevail, as in Whitlatch v. Casualty Co., 149
N. Y. 45, 43 N. E. 405.

But the furnishing of the certificate of the magistrate or notary liv-
ing nearest the place of the fire, provided for in the policy, was not
such a condition precedent.    The plaintiff was not obliged to furnish
it, unless "required" to by the company.    Such is the language of the
policy.    She therefore did not have to prove the negative that she was
not so required; or the affirmative that she was and complied; but
it was for the company to plead as a defense the condition precedent
to its right to such certificate, viz., that it called for it of the plaintiff,
and then that she failed to furnish it.    The question of compliance
with this provision of the policy being therefore not in issue, no fur-
ther note is taken of it.

The requirement of the policy that the proofs of loss shall be "signed
and sworn to" by the insured means, by general understanding and
practice in matters requiring such verification, that the oath, or a
certificate thereof, shall be in writing.    This present certificate does
not state that the affiant made oath before the notary.    This defect
seems to be fatal to its sufficiency.    Proff. Not. § 68; Smart v. Howe,
3 Mich. 590.    But the company did not include it among its grounds
of objection, and thus excluded and waived it.    The only objections
specified on the head of the oath were that there was "no venue and no
affidavit signed by the insured."    There being no requirement in the
policy that the insured should sign the affidavit, the latter is untenable.
Proff. Not. § 67; Millius v. Shafer, 3 Denio, 60.    But the former was
good, absence of a venue making an affidavit a nullity.    Thompson v.
Burhans, 61 N. Y. 52; Proff. Not. § 66.    The affidavit of the notary
subsequently made and served upon the company did not supply the
lack of a validly certified oath by the insured.    It was her oath in
writing, or a valid certificate thereof, which the company was entitled
to.    The proofs of loss were thus fatally defective, and the plaintiff
may not prevail unless such defect were waived by the company.    It
now seems to me as matter of law that it was.    After stating in its
letter of April 18th the said two objections to the certificate of oath,
it further stated therein that it required that each schedule should be
sworn to by the person claiming to own the property contained in it.
This was notice that the oath of the insured would not be accepted
as sufficient, but that there must be five oaths, viz., one by each mem-

ber of the household to the schedule of his or her property; notwithstanding that the policy required the oath of the "insured" only. By the said letter it demanded that the insured "serve new papers in proper form," and prescribed the form, which included the said five oaths. By its letter of May 11th the company again explicitly exacted this. It said: "We insist that each one shall swear to the list claimed for him." It added that it rejected the proofs of loss sent in, and gave opportunity to put in corrected proofs, saying that such proofs must be sworn to "by each of the insured in proper form," meaning by each member of the household. The company thus gave notice that a tender of proofs of loss verified as required by the policy, viz., by the oath of the insured, would not be accepted as sufficient, but that the proofs must be verified by the five members of the household in order to be so accepted. It thereby set at naught and dispensed with the provision of the policy for proofs of loss, and set up a new requirement instead. The rule would seem to be the same here as in the case of obligations to tender performance of contracts generally. If notice be given in advance that the tender, whether of money or of other performance, will not be accepted, it need not be made. Crist v. Armour, 34 Barb. 378; Burtis v. Thompson, 42 N. Y. 246; Bunge v. Koop, 48 N. Y. 225; Howard v. Daly, 61 N. Y. 362; Baumann v. Pinckney, 118 N. Y. 604, 23 N. E. 916. It always excuses the performance of a condition precedent if it be hindered or waived by the other party. Langdon v. Burrill, 21 Vt. 466. One who declares to the other party to a contract his intention not to abide by it commits thereby a breach upon which action may be brought at once. Bish. Cont. § 1428. And in insurance law, a denial by the insurer of liability in any event, is held to operate as a waiver of the provisions requiring notice and proofs of loss, and submission to arbitration. Joyce, Ins. §§ 3257, 3373. A notice in advance that proofs of loss made in a form different to that required by the policy, will be insisted on, and that proofs made in the form required by the policy will be rejected as insufficient, seems to present an equally clear case of waiver.

It is insisted by the defendant that whether the company had delayed so long that it must be deemed to have abandoned the appraisal or arbitration was a question of law for the court, and that it was error to submit it to the jury. Being informed by the insured by letter on June 8th of the specific reason why she objected to the appraiser it had named as not "disinterested," it made no response for 21 days, and did nothing in the matter of the loss, though it had its office and transacted its business in the same city where the insured lived and the fire occurred; whereupon this action was brought on June 29th. It seems to me it was not error to submit the question to the jury. To be sure, it is often repeated that what is a "reasonable time is, when there is no dispute as to the facts, a question of law for the court." Hedges v. Railroad Co., 49 N. Y. 225; Roth v. Railroad Co., 34 N. Y. 553; Bennett v. Insurance Co., 67 N. Y. 277. Nevertheless the rule is not generally so understood, especially in the trial of causes, but is every day taken and stated to be, that when the facts are undisputed they present a question for the court, unless different inferences may

be reasonably drawn from them, in which case the question is for the jury. Moreover, the undisputed fact in this case of the delay of 21 days, had to be considered in the light of the society of facts in which it was found. The delays which had already occurred, and the difficulty of preserving any longer the remains and evidences of the goods damaged and destroyed, bore directly upon the question of whether it was an undue delay.

The plaintiff was not obliged to go into an appraisal before an arbitrator appointed by the company who was not disinterested and unbiased, and the evidence on that head presented a question of fact for the jury. Having found against the competency of the arbitrator, the jury then had before it properly the question of the abandonment of the arbitration.

The action seems to be properly brought in the name of the insured alone for the entire loss. The policy in effect recognizes her as taking the insurance not only for herself individually, but as trustee for the members of her household; and this enables her to recover the entire loss. Stilwell v. Staples, 19 N. Y. 401; Waring v. Insurance Co., 45 N. Y. 606. At all events, if the rather obscure objection made on this head, in the motion to dismiss for variance, be understood as an objection that all interested should have been joined as plaintiffs (Boynton v. Insurance Co., 16 Barb. 254; Winne v. Insurance Co., 91 N. Y. 192), it is unavailable for not having been pleaded in the answer (Code Civ. Proc. §§ 498, 499).

There is no requirement in the policy that the proofs of loss should state the cost price of the articles, and the company had no right to make the objection on that head. The requirement is to state "the cash value of each item thereof, and the amount of loss thereon." The inventory which the insured is required by the policy to make "forthwith" after the fire, "stating the quantity and cost of each article and the amount claimed thereon," is confined by the terms of the policy to damaged articles and does not embrace articles totally destroyed; and there is no requirement that it be made part of the proofs of loss.

The motion for a new trial is denied.