MAX ROSEN, Appellant, *v.* WILLIAM GREENWALD and Others, Copartners, Doing Business under the Firm Name and Style of K. D. G. DRESS Co., Respondents.

First Department, March 17, 1922.

Contracts — contract to sell going concern and assign lease — action by purchaser for breach — waiver by defendants of tender of performance before time therefor — instructions — not error to refuse to charge that existing capacity to perform was element of waiver.

In an action to recover damages for the breach of a contract to sell and convey to the plaintiff a dressmaking plant and equipment and the lease of the premises, there was evidence tending to show that prior to the time for the closing of the sale defendants repudiated the contract.

*Held,* that it was not error for the court to refuse to charge that, while the formal requirement of a tender might be waived, in order to establish a waiver there must be an existing capacity to perform and that if the jury did not believe that the plaintiff had the money with him at the time when the contract was repudiated, even though he did not actually offer it, they must find for the defendants, for, if tender of performance by the plaintiff was waived by defendants' repudiation, the plaintiff was only bound to show ability to perform at the time and place agreed upon for performance, which was later than the alleged repudiation. At the time of the repudiation it was not essential to a waiver that the plaintiff was able to perform. The latter part of the request was also erroneous in that it made plaintiff's credibility with respect to having the money with him at the time of the alleged repudiation the controlling test with respect to his ability to perform.

APPEAL by the plaintiff, Max Rosen, from an order and determination of the Appellate Term of the Supreme Court, First Depart-

ment, entered in the office of the clerk of the City Court of the City of New York on the 20th day of January, 1921, reversing a judgment of the City Court of the City of New York in favor of the plaintiff, and an order denying defendants' motion for a new trial made upon the minutes.

*Max J. LeBoyer*, for the appellant.

*Kornblueh & Hutter* [*Arthur Hutter* of counsel], for the respondents.

LAUGHLIN, J.:

This is an action to recover damages for the breach of a contract by which the plaintiff alleges that the defendants agreed to sell and deliver to him their dressmaking plant and equipment on the fourth floor of premises known as 28 West Fifteenth street in the borough of Manhattan, New York, and their lease of the premises. Plaintiff alleges that the purchase price agreed upon was $1,850 and that when the agreement was made he paid $130 on account and that at the time agreed upon for consummating it he tendered the balance of the purchase price but defendants refused to accept the same or to deliver to him possession of the plant and premises, and of the lease and an assignment thereof to his damage in the sum of $2,000. The defendants alleged that the sale was conditioned upon their securing their landlord's written consent to an assignment of the lease, which was necessary, and that the landlord refused to give such consent and they thereupon notified the plaintiff and tendered back the payment made by him. The verdict in favor of the plaintiff was for $500. The court submitted to the jury an issue of fact arising on conflicting testimony with respect to whether the defendants represented that they were in a position to deliver a valid assignment of the lease and a definite agreement was made or whether the agreement negotiated was subject to the defendants' obtaining the written consent of their landlord to the assignment of the lease. The plaintiff testified that the agreement was verbally negotiated at a meeting between him and one Simpson, who accompanied him, and the defendants; that the defendant Deutsch stated in the presence of the other defendants that she had arranged with the landlord about the lease and that it was all right and said it " is all fixed up, * * * it is all right," and that it ran for about three years longer; that it was agreed that he was to pay $1,850, $30 of which he then paid in cash and that he gave a check for $100 the next day, which was Thursday, October 30, 1919, and received in exchange therefor a receipt for the first payment of $130 and that an inventory of the property was made at that time and it was then agreed that the final

settlement would be made at the premises on Saturday between noon and two o'clock; that on Saturday morning, about ten o'clock, he went to Simpson's place of business at 20 West Nineteenth street " with all the money ready to go down for the settlement " and found the defendant Deutsch there and that she stated to him that her partners had decided to remain in the business and refused to deliver the plant to him and he replied that he wanted the plant and insisted upon having it according to the agreement; that he had with him about $2,500 in cash to pay the balance of the purchase price and to reimburse the defendants for a deposit they had made with the landlord to secure the lease and informed the defendant Deutsch that he had all the money with him and was ready to close the transfer and to go to a lawyer's office and make the final settlement; that she finally said she would go back and inform the other defendants that he refused to take back the deposit and would telephone him at Simpson's office at four o'clock that afternoon what they said; and that he waited in Simpson's office from three until about four-thirty that afternoon and heard nothing from her or them. The testimony of Simpson substantially corroborated the plaintiff with respect to the purchase of the property, the representations concerning the lease and the interview between the plaintiff and the defendant Deutsch in his office on Saturday morning. He also testified that Mrs. Deutsch telephoned him the day before that her partners charged her with having taken a commission on the sale of the property to plaintiff and requested him to use his influence with the plaintiff to accept a return of the down payment and that he called on her partners and assured them that she was receiving no commission. Plaintiff also showed that on Saturday, November first, the day on which the sale to him was to be consummated, defendants sold the plant and lease to others, one of whom inspected it the day before, and that a few days thereafter defendants received formal consent in writing from their landlord dated November first for subletting the premises and under the same date as signed the lease to the other purchasers, and received as the consideration therefor $250 more than they were to receive from the plaintiff. The testimony of an expert, called by the plaintiff, with respect to the value of the lease was uncontroverted. An officer of the defendants' landlord testified that the defendant Deutsch called on him the latter part of October with the names of prospective tenants to whom she wished to assign the lease, one of whom was the plaintiff, and he refused to approve the plaintiff as a tenant. The defendant Deutsch testified in effect that the proposed sale to the plaintiff was conditioned upon the defendants' obtaining the consent of the landlord

to the assignment of the lease which was refused and that she notified the plaintiff thereof by telephone and that he called the next day, which was Friday, and she offered to return the deposit but he refused to take it, and she further testified that she was not in Simpson's office on Saturday morning, as claimed by the plaintiff, but was in the office of her attorney from ten A. M. until twelve-thirty that day waiting for Hyman, who was one of those to whom the defendants sold the property. Her testimony was in part corroborated by the testimony of the other defendants. Miss Levine, who was employed by Simpson, testified that the defendant Deutsch was in Simpson's office both on Friday and Saturday as testified to by him. The court instructed the jury that it was incumbent on the plaintiff to show a tender of the balance of the purchase price unless the defendant Deutsch informed him at Simpson's office on Saturday that the defendants would not perform, in which event there was no necessity for a tender. Defendants' counsel requested the court to charge that while the formal requirement of a tender may be waived, in order to establish a waiver there must be an existing capacity to perform and that if the jury did not believe that the plaintiff had the money with him at that time, even though he did not actually offer it, they must find for the defendants. The court declined so to charge and the defendants duly excepted. The reversal by the Appellate Term was on the ground that the court erred in declining to give this instruction. I am of opinion that the court properly refused to charge as requested. The jury might have found and doubtless did find that a tender of performance by the plaintiff was waived by defendants' repudiation of the contract and on that theory plaintiff was only bound to show ability to perform at the time and place agreed upon for performance, namely, at the place of business of the defendants between noon and two P. M. that day. The request was improperly phrased. The interview, if it took place, must have been at Simpson's office at about ten A. M. that day, for that is the time, according to the testimony of the plaintiff, and defendant Deutsch denies that she was there. That was neither the time nor the place for tender of performance. The request plainly implied that there could be no waiver unless the plaintiff was then, several hours before the time for performance, able to perform. Manifestly the validity and effect of the waiver of tender of performance by the defendants in advance of the time for performance does not depend upon the plaintiff's then ability to perform. The latter part of the request was also erroneous in that it made plaintiff's credibility with respect to having the money with him at the time of the interview at Simpson's office

the controlling test with respect to his ability to perform. There was no request for an instruction that plaintiff was not entitled to recover unless the jury found that but for defendants' repudiation which relieved him from making a formal tender of performance (*Bunge* v. *Koop*, 48 N. Y. 225; *Lawrence* v. *Miller*, 86 id. 131; *Brinley* v. *Nevins*, 162 App. Div. 744; *Cornell* v. *Fox*, 95 id. 71; *Davis* v. *True*, 89 id. 319, 324) he could and would have been ready, willing and able to perform the agreement on his part at the time set for closing so as to present for decision the point as to whether it was incumbent on him to show that he could and would have been ready, willing and able to perform at that time had he not been relieved from consummating preparations therefor by defendants' repudiation of the contract, which is a point apparently not authoritatively settled (See Williston Cont. § 832 and note; *Lawrence* v. *Miller, supra; Eddy* v. *Davis*, 116 N. Y. 251; *Stokes* v. *Mackay*, 147 id. 223, 232, 233; *Ziehen* v. *Smith*, 148 id. 558, 561), and, therefore, since no exception presents the point we cannot decide it and must for the present leave it where it stands under the existing authorities.

It follows that the determination of the Appellate Term should be reversed, with costs, and the judgment of the City Court affirmed, with costs.

CLARKE, P. J., SMITH, MERRELL and GREENBAUM, JJ., concur.

Determination reversed, with costs and disbursements, and the judgment of the City Court affirmed, with costs.