## BOYNTON, SOUTHWICK and others *vs.* THE CLINTON AND ESSEX MUTUAL INSURANCE COMPANY.

Where the assured, a mortgagor, after assigning the policy to his mortgagee, with the consent of the insurer, and as collateral security, conveyed a moiety of the premises in fee, and at the same time took back a lease of the same for five years, at a nominal rent, and agreed to keep and leave the premises in repair; and the amount due on the mortgage was more than half of the amount of the insurance, and by the terms of the charter of the insurance company a transfer of the property without consent of the company rendered the policy void; *Held*, that there could be no recovery for any loss beyond the amount due on the mortgage.

*It seems*, in such a case, the lessee would be obliged to rebuild.

Payment of an assessment, made after the property is burned, does not obviate the objection arising from alienation.

After an assignment of a policy of insurance, with the consent of the insurer, the assured can do no act affecting the rights of the assignee, without the privity of the latter.

Where goods insured are described as " in the store part" of the building insured in the same policy, and at the time of the loss the goods are in a

Boynton *v.* Clinton and Essex Mutual Ins. Co.

room in another part of the building, occupied for a different purpose; the "store part" being then in the occupation of other persons, no recovery can be had, for the loss of the goods.

Where a policy of insurance is assigned as collateral security for a debt, the assignor and assignee may join in a suit to recover the loss.

An insurance company may waive defects in the preliminary proofs, by objecting to the payment of the loss solely upon other grounds.

This was an action to recover for the loss of property insured by the defendants.   On the first day of March, 1845, Southwick, Cannon and Warren, sold a lot in the village of Plattsburgh, on which was a building divided into two stores, to the plaintiff Boynton, for $1600, and took from him a bond and mortgage for the purchase money, payable in eight annual installments. The principal value was then supposed to consist of the building, which was proved to be worth $2500 or $3000 at the time of the fire.   Boynton agreed to obtain an insurance; and on the first of May, 1845, the defendants insured $1200 on the building, and $400 on the goods, for five years; the policy containing a clause that the interest of the assured was not assignable without the consent of the defendants in writing; and the policy was to be void, if Boynton transferred the property without like consent.   The policy was assigned to S., C. and W., on the 24th of June, 1845, with the consent of the defendants; S., C. and W. signing the premium notes with Boynton.   This assignment was, in fact, made as collateral security for their debt.   On the 16th of March, 1848, Boynton gave a deed in fee to one H. G. Tisdale, of the north half of the property, or north store, for the consideration of $1500.   It was admitted that the part conveyed to Tisdale, and the remainder, were of equal value.   At the time of this conveyance, Tisdale gave to Boynton a lease of the same north half, for the term of five years, at the yearly rent of one dollar; and Boynton covenanted therein to keep and leave the premises in good condition and repair, and deliver them up in as good repair as the same might be any time during the term, the natural decay of time excepted.   On the 10th of August, 1849, the store was burned, and also goods belonging to the plaintiff, to the amount of $123.   At the time of the fire, Boynton was in possession of an office in the second story, in

which he had a few goods, and also a few in the third story, having rented the stores to others. On the 29th of October, 1849, the defendants made an assessment of $28,16, upon the premium note, of which they gave notice to Boynton on the 16th of November, 1849, and which was paid by the plaintiffs, S., C. and W. The amount due from Boynton to S., C. and W., at the time of the trial, was $816. When the preliminary proofs were presented to the defendants, they refused to pay for the real estate, because of the alienation; and for the personal, because it was not in the place where it was when insured. Some of the facts are more particularly stated in the opinion of the court.

*G. M. Beckwith*, for the plaintiffs.

*C. F. Taber*, for the defendants.

HAND, J. No point has been made, that the preliminary proofs were insufficient. Had that objection been raised I think it was waived by the defendants putting their refusal to pay upon other grounds. (*Ætna Ins. Co.* v. *Tyler*, 16 *Wend.* 385. *Francis* v. *Ocean Ins. Co.*, 6 *Cowen*, 404. *O'Niel* v. *Buffalo Ins. Co.*, 3 *Comst.* 122.)

The assignment of the policy to Southwick, Cannon and Warren, was made with the consent of the company. After that, Boynton could do no act to affect the rights of the assignees, without their privity. (*Traders' Ins. Co.* v. *Robert*, 9 *Wend.* 404; *S. C.*, 17 *Id.* 631. *Tillou* v. *The Kingston Mutual Ins. Co.*, 7 *Barb.* 570. *Conover* v. *Mutual Insurance Co. of Albany*, 1 *Comst.* 290.) It follows, that the assignees are entitled to recover the sum still due on their mortgage, which is admitted to be $816, and interest from the fifth of June, 1849.

Beyond this, I think there can be no recovery. The seventh section of the act of incorporation of the defendants, (*Laws of 1836, pp.* 462, 44,) declares that "when any property insured with this corporation shall be alienated by sale or otherwise, the policy shall thereupon be void, and be surrendered to the

directors of said company, to be canceled; and upon such sur-
render, the assured shall be entitled to receive his deposit notes
upon payment of his proportion of all losses and expenses that
have accrued prior to such surrender," &c. The plaintiffs'
counsel insists that, as Boynton at the same time, took back a
lease from his grantee for five years, at a nominal rent of one
dollar, and agreed therein to "keep and leave" the buildings
"in good condition and repair;" and, at the expiration of the
term, deliver up the premises "in as good repair as the same
now are or may be in, any time during the said term, the natural
decay of time excepted;" this is not an alienation that comes
within the spirit of the act. That Boynton is obliged to repair
the damage done by fire, and that, in fact, this is a conveyance
to commence in future. (1 R. S. 724.) Boynton, probably,
could have been compelled to rebuild. (Pym v. Blackburn,
3 Vesey, 38. Philips v. Stevens, 16 Mass. Rep. 238. Bul-
lock v. Dommitt, 6 Term Rep. 650; S. C. 2 Chitt. Rep. 608.
Paradine v. Jane, Alleyn, 27. Mantz v. Goring, 4 Bing.
N. C. 451. Payne v. Haine, 16 Mees. & Welsby, 541. Ches-
terfield v. Bolton, Comyn's Rep. 627. Plowd. 29. 5 Vin. 256.
6 Id. 405, 6. 2 Saund. R. 422, n. 1 Id. 322, n. 7 Comyn's
Land. and Ten. 201, et seq. And see Warner v. Hitchins,
5 Barb. 666.) But, however that may be, it makes no differ-
ence in this case; for this was unquestionably an alienation of
the property. It was not a mere agreement to convey at some
future day; but was, what it purported to be, a conveyance in
fee. The grantor received a lease for five years; but nothing
appears to show that the conveyance was not absolute. The fee
was immediately vested in the grantee. And that made void
the insurance as to the equity of redemption, by the express
provisions of the statute, unless subsequently ratified and con-
firmed to the grantee.

Nor does the payment of a subsequent assessment by his
assignees, aid Boynton. And would not, had he paid it him-
self. I should have been better satisfied, if he could have
put this upon the ground of estoppel, as in Frost v. The
Saratoga Mutual Ins. Co., (5 Denio, 154.) But in that case

there was a breach of warranty, which made the policy void. Here it is made so by the act of incorporation; and the defendant is a member of the company; and it has been expressly held, the opinion of the court being given by the same judge who gave the opinion in *Frost* v. *The Saratoga Mutual Ins. Co.*, that, under that clause an assessment and payment thereof, after alienation, were neither a waiver nor an estoppel. (*Neely* v. *Onondaga County Mutual Ins. Co.*, 7 *Hill*, 49.)

Nor can Boynton recover for the parcel of goods said to have been destroyed. The insurance was on the goods "in the store part." He had let the store and removed a few articles into the second and third stories of the north store. The counsel waived all claim to those in the attic or third story. And as to those in the second, if he could recover, no amount or value was shown. Indeed, hardly any thing denominated goods has been shown to be there, except some camphor in jars. A snuff jar and some tea chests were there, but no proof of their contents, or that they contained any thing, was given. These were in his own office, not in the "store part." It did not appear that they were kept for sale, or had ever been in the store, or that the office was in any way connected with the store. I do not say that this policy would cover only goods in the sales room; and not, for instance, a surplus kept to replenish, &c. That case is not now under consideration. But these articles were not within the spirit or letter of the policy.

These plaintiffs could not have joined before the code. (*Mann* v. *Herkimer Ins. Co.*, 4 *Hill*, 187. *Howard* v. *Albany Ins. Co.*, 3 *Denio*, 305. And see *Carpenter* v. *Prov. Wash. Ins. Co.*, 16 *Peters*, 493.) And I have had some doubt upon this point, but it was admitted that the assignment to the mortgagees was as collateral security. This being so, I think Boynton may be coplaintiff under our present system. (*Code*, §§ 111, 117.) Both have "an interest in the subject of the action." Although the alienation of Boynton rendered the policy void except as to the interest of his mortgagees, so far he was yet interested; and payment of this loss to them would enure to his benefit. And if they had compelled him to pay the mortgage after the loss,

unless the loss was occasioned by his misconduct, he would have been entitled to the benefit of their claim upon the defendants. (*Robert* v. *Traders' Insurance Co.*, 17 *Wend.* 631. *Tillou* v. *Kingston Mutual Ins. Co.*, *supra.*)

There must be judgment for the plaintiffs for the amount due on the mortgage.

[ESSEX SPECIAL TERM, March 7, 1853. *Hand*, Justice.]