SMART, plaintiff in error, *vs.* HOWE, defendant in error.

The return of a Justice of the Peace in an appeal, in which the name of the Justice appears only in the caption, is a good return, although not signed by him; and the Court can as well take notice that the name of Justice in the caption is written by himself as if it appeared at the end of the return.

The *jurat* to an affidavit sworn to before a Justice of the Peace, in the words "sworn and subscribed this" &c., omitting the words "*before me,*" is a nullity by reason of such omission, and where such *jurat* is to an affidavit made in an appeal cause, the Circuit Court has no jurisdiction of the appeal.

The affidavit for an appeal being required by the statute, on the ground of public policy, cannot be waived or dispensed with by the appellee.

It appeared by the record in this cause that the plaintiff instituted a suit against one Charles Brewster, before Charles Peltier, Esq., a Justice of the Peace of the city of Detroit, in which he recovered judgment on the 18th of February, 1853; that the defendant was summoned as garnishee in that suit, and that such proceedings were had in the premises pursuant to the statute, that the plaintiff recovered judgment against said defendant, as garnishee, on the 30th of April, 1853, for $91 44, damages, besides costs; that defendant, intending to take an appeal from the judgment to the Circuit Court of Wayne county, entered into a recognizance, and filed a paper purporting to be an affidavit, the *jurat* of which was in the following words: "Sworn and subscribed this 14th day of May, A. D. 1853. (Signed.) Charles Peltier,

Justice of the Peace." It further appeared that papers purporting to be copies of the proceedings had before said Justice against said garnishee, had been filed in said Circuit Court, but they were neither certified by the signature of said Justice, at the end of the certificate, nor authenticated in any form. The plaintiff never appeared to prosecute his suit in said Court, and a nonsuit was entered against him, and judgment for costs in favor of the garnishee. The plaintiff then removed the cause by writ of error to this Court.

The question presented upon the errors assigned, for the consideration of this Court, were:

1. Whether there was a sufficient affidavit for the appeal from the Justice, filed before him.

2. Whether there was any return made by the Justice to the Circuit Court.

*A. Davidson,* (with whom was *A. D. Fraser,*) for plaintiff in error.

1. The *jurat* in this case was radically defective, as it did not contain the words "before me." (*Graham* vs. *Ingleby,* 1 *Wels. H. & G.* 651; *Reg.* vs. *Norbury,* 51 *E. C. L.* 534; *cases cited in Har. Supl. Dig.* 26.)

2. There is no sufficient authentication of the return by the Justice. (*R. S.* 1846, *p.* 408, §§ 152–3; *Sess. L.* 1849, *p.* 101, § 142.)

3. The Circuit Court never acquired jurisdiction of the cause. Nothing but a strict compliance with the requirements of the statute conferred jurisdiction upon that Court. (9 *Cow.* 227; 4 *Ib.* 80, 540; 6 *Ib.* 585; 7 *Ib.* 468; 15 *J. R.* 141.)

*C. I. & E. C. Walker,* for defendant in error.

1. No form of expression is required in the *jurat,* or fixed by statute, rules of Court, or books of practice. (3 *Chit. Prac.* 339, 546; 1 *Arch.* 63; 2 *Ib.* 320; 1 *Tidd. Prac.* 494,

495, 184; 1 *Bur.* 342.) It is only necessary that the *jurat* be such that it may be reasonably inferred that the oath was properly administered. (10 *C. Law*, 614; *Rose* vs. *Solliers*, 4 *B. & C.* 359; *Bell* vs. *London Assurance Co.*, 2 *E. L. & E.* 193.) Thus a *jurat* "sworn at Chambers," seems sufficient. (5 *Harr. Dig.* 26–7; 9 *Ib.* 21; 13 *M. & W.* 517.)

2. It is at most a mere irregularity, which, like ground for abatement, should be taken advantage of at the first opportunity. (*Delaine* vs. *Richardson*, 4 *Denio*, 94; *Reed* vs. *Drake*, 7 *Wend.* 351; *Shank* vs. *Warfel*, 14 *S. & R.* 205; *Robinson* vs. *Shrouds*, 1 *Ash.* 168; *Hackney* vs. *Hackney*, 9 *Humph.* 452; *Wetmore* vs. *Plant*, 5 *Conn.* 541; *Bac. Abr.*, error *K.*, 5.)

Want of Justice's signature to return is no defect. (*R. S.* 408, § 152.) Even a will, thus signed at the *commencement*, is well executed. (*Jar. on Wills*, 70; *Sarah Niles' will*, 4 *Dana*, 1.)

By the Court, WING, J.

We will first consider the second assignment of error.

The caption to the return of the Justice is as follows, viz:

"Return to an Appeal,

In Justice Court, Wayne County,
David Smart *vs.* George W. Howe, } Before Charles Peltier.
as Garnishee of Charles Brewster. }

"An appeal having been taken in this cause, I, Charles Peltier, Justice of the Peace, before whom said cause was tried, do hereby certify and return to the Circuit Court of the County of Wayne, the proceedings had before me therein, as follows;" at the end of the return this clause was added: "given under my hand at Detroit, the 10th day of August 1853," but the name of the Justice is not added.

The return is explicit in respect to every matter that is required by statute to be set forth in it. The signature of the Justice at the end of the return was not necessary—it could

have added no additional sanction to it; it purports to be the act of the Justice himself, and it is not shown or intimated that it was not. If it had been made by a third person, it could not have been the act of the Justice without his signature at the end of it. We can as well take notice that the name of the Justice in the caption is written by himself as if it appeared at the end of the return.

Then as to the first error. The *jurat* to the affidavit is as follows, viz: " sworn and subscribed this 4th day of May, A. D. 1853, Charles Peltier, Justice of the Peace."

The objection made to the affidavit is, that it was not sworn to, or if sworn the *jurat* does not certify that fact, and therefore the appeal was not taken, and this Court acquired no jurisdiction of the cause.

An affidavit is an oath in writing, sworn before and attested by him who hath authority to minister the same. (1 *Bac. Ab.* 124.) But Tidd in his Treatise on Practice, vol. 1, page 494, says, " the *jurat* of affidavits should state where, when, and before whom they were sworn."

In the Queen *vs.* The Inhabitants of Blosborn, (6 *Adol. & Ellis*, 51 *E. C. L.* 526,) a certiorari was sued out of the Queen's bench to reverse the order of Justices. A motion was made to quash the certiorari on the ground that the *jurat* (which was like this) was defective. Lord Denman, C. J., in giving the opinion of the Court, says, " On the first impression, we always feel desirous to get over objections of this kind if we can, but we must abide by established rules; and of these there is none more wholesome than that documents confirmed by oaths should set forth that they are sworn before a person having proper authority. Here the authority is given by act of parliament, and we cannot see that it has been duly exercised unless the *jurat* shows it. No instance has been mentioned in which this has not been held necessary. This depends upon the necessity of the thing itself." The Chief Justice quotes and approves the resolves of the

75

Court in The King *vs.* The Justices' of the West Riding of Yorkshire, (3 *M. & S.* 494,) " That to dispense with these forms is only to get into uncertainty and mischief, and by a strain of jurisdiction to help parties through that which they ought to look to themselves." Lord Denman proceeds, " This is not an irregularity which can be waived. A defect of jurisdiction is shown, and the objection is one which we cannot avoid giving effect to." Justice Coleridge says in the same case, " This defect is not a mere irregularity, but affects the jurisdiction. The objection may seem to be one of little importance; but if ever we are to use strictness, it should be on affidavits and all that relates to their forms. Here it is consistent with the *jurat* that the oath was not administered by the commissioner at all." Justice Wightman concurred.

In Regina *vs.* The Inhabitants of Norbury, in note to the last case cited, the *jurat* to the affidavit was defective in the same particulars as in this case. The Court adhere to their decision in the case last cited. Lord Denman again says: "Here it does not appear that the affidavit was sworn before any one."

In Empey *vs.* The King, (13 *M. & W.* 519,) the *jurat* to the affidavit was signed by E. H. Alderson, but it did not appear by the *jurat*, or otherwise in the affidavit, that it was sworn " *before* " the judge, but it was held to be distinguishable from the cases cited above, as in those cases the affidavits were taken before a commissioner. The Court say, " this form of *jurat* has been invariably used, and we are unwilling to question its validity." From which it would appear that where an affidavit was sworn before a Judge of the King's Bench, or Common Bench, Courts would hold that the *jurat* (though it did not state that it was sworn " *before*" the Judge) imported that the oath was administered by the Judge, but only in such a case. In the case in Wellsby, H. & Gordon, 651, the *jurat* to an affidavit to a plea in abatement, was as follows: " Sworn at Manchester, in the county of Lancaster, this 29th

July, 1847; Samuel H. Buckley, a Commissioner:" omitting the words "*before me*" in the *jurat*. The Court say, "it is the same as if there had been no affidavit." Parke, Baron, concurred with the Chief Baron, and said: "We are bound to hold that this affidavit, having been made before a Commissioner, is bad, for omitting in the *jurat* the words 'before me.'" He distinguishes that case from an affidavit taken before a Judge at Chambers. He further remarked: "The present affidavit is equivalent to no affidavit." Alderson, Baron, said, "the affidavit ought to have followed the usual form, and not having done so, must be treated as no affidavit."

The cases we have cited are precisely in point. It is not necessary for us to inquire into the reason of the distinction recognized by the Judges of the King's Bench and the Exchequer, in these cases between an affidavit sworn to before one of the Judges of the Court, and one sworn to before a Commissioner or other inferior officer. It was a common practice with all the Judges to administer oaths at Chambers, and it is probable they were willing to take notice of the long settled practice in such cases, of omitting the words "before me" in the *jurats* signed by them, and hold that the *jurat*, when signed by a judge, imported what according to their experience in cases before them, was true, viz: that the oath was administered by the judge who signed the *jurat*.

The defendant insists that though the oath should be taken before a person authorized to administer it, yet no particular form of expression is required in the *jurat*, either by the statute or rules of court. This is true, but we have seen that the books of practice and the reports do recognize and insist upon the necessity of incorporating into the *jurat* the fact that the affiant was sworn by the officer who signs the *jurat*.

The defendant also insists that the omission in the *jurat* in the case in question, is a mere irregularity. If this was true we could have no difficulty in supporting the proceed-

ings in the Circuit Court; but we have seen that the omission in the *jurat* has not been treated by the English Judges in any case as an irregularity. In the case of The Queen *vs.* The Inhabitants of Blosborne, which was very elaborately discussed before the King's Bench, Lord Denman says: "The case has been cited in which such an omission was held to be an irregularity." In support of his views, the counsel for the defendant has cited many cases, but none of them are in point; neither are they the same in principle. There is a point of public policy involved in appeals. The Legislature have attempted to provide for a re-hearing of cases upon the merits in the higher Courts, but they have attempted to place this right under restrictions, and it is only upon an affidavit of a party aggrieved, that justice has not been done in his case, that an appeal is allowed. He cannot appeal as a matter of course, or at his own option, without a strict compliance with the statute, and it is believed that the requirement of the oath presented by statute, would prevent appeals for delay merely. In granting appeals upon these terms, the Legislature also guarded the rights of the opposite party by prescribing that security should be given to him in such manner as would be likely to guard all his rights.

The affidavit meets the requirement of the statute upon the ground of public policy, and it cannot be dispensed with. The bond is intended for the defendant, and he may dispense with it if he pleases. In the cases cited by the defendant, matters in which the appellee was alone interested, and in which the interests of the public were in nowise concerned, were omitted, and it was held that the requirement of the thing omitted being for the benefit of the defendant, he might, if he chose, waive it, either expressly or impliedly.

Thus in Shank *vs.* Warfel, (14 *Serg. & R.* 205.) The appeal was taken on the 14th of August 1821; a motion was made to dismiss for a defect in the bond for appeal; no other waiver or acquiescence appeared.

The Court, though they held the recognizance void, held that the plaintiff had suffered the cause to remain in Court too long without objection, and they said it was like a plea in abatement, which must be made in a reasonable time. This case followed the previous decision of the Supreme Court of Pennsylvania, in the cases in 2 Serg. & R. 288; 3 Ib. 364; 8 Ib. 526; 13 Ib. 205, 1. In the earliest case, in 2 S. & R., the defendant entered into a recognizance for costs, omitting the debt. This was a fatal error. The plaintiff filed his declaration and the defendant plead to it, and the cause remained in court three years, and then on motion, the Court of Common Pleas struck the case from the calendar. The Supreme Court on error says, "the recognizance was intended for the plaintiff and he may waive it, and he has done it by filing declaration and joining issue, and keeping the cause so long in Court."

The act of Assembly did not intend to insist on bail if the parties assumed to waive it. "The decision in 14 S. & R. is consistent with this early decision of the same Court, and must be considered as having been made in reference to all the principles affirmed in that and the earlier cases in that Court upon the same point. See Ashmead Rep. 170, to the same point.

In the case of Dewey *vs.* Green, cited from 4 Denio, 94, the affidavit for an attachment in a Justice Court stated the facts on belief. The Court held it was fatally defective, and as the defendant objected to it before pleading over, that they must give him the benefit of his objection; but they say if he had not made a motion to quash before pleading, he would have been deemed to have waived the objection. This case goes upon the same principle as those in Pennsylvania. It was a matter between individuals, and for their benefit, and they might waive it. The same principle is involved in the case cited from 9 Humphrey, 453. In the case cited from 5 Conn., suit was brought by a Judge of Probate on a bond

. given to him as Judge of Probate; before the suit was terminated the term of office of the plaintiff had expired; judgment was rendered in his favor, and the defendant brought a writ of error, and assigned as error, that fact, that the Judge of Probate was out of office before judgment, and he insisted that the Court could not give judgment in his favor; he likened it to the case of a deceased plaintiff. The Court say the error does not appear in the proceedings. It might have been plead *puis darrein continuance*, and the defendant could not have advantage of that which might have been objected in the Court below.

To the same effect are cases arising upon objections to pleas in abatement. They are decided upon the same principle. In this case there was no waiver, and no step taken by the defendant in error in the Circuit Court, and only about three months elapsed from the entry of the appeal to the day the judgment was rendered.

Upon a review of the cases cited by defendant's counsel, and many others, we are unable to find one which is opposed to the English cases we have cited; and while we have endeavored to struggle against the force of those decisions, we are compelled to acknowledge the soundness of the principle upon which they are decided, and we accordingly decide that there was error in the judgment of the Circuit Court, and it must be reversed.