ANN M. McMANUS, Respondent, v. THE WESTERN ASSURANCE COMPANY OF TORONTO, CANADA, Appellant.

*Fire insurance policy — what complaint authorizes proof of compliance with its conditions — effect of a denial — defective proofs of loss — certificate of the oath of the insured omitting to state the venue or that it was made before the notary — waiver of defects by the company — abandonment of the appraisal by the insurer — who may sue on a policy covering "the property of the assured or any member of the household" — what can be pleaded as a defense.*

A complaint in an action upon a policy of fire insurance, which, after setting forth the destruction of the property and the service of proofs of loss, alleges that the plaintiff has "complied with all the other conditions of the said policy on her part," entitles the plaintiff to make proof of compliance with the conditions contained in the policy or of matters excusing her non-compliance; a general denial contained in the answer interposed to such complaint is sufficient to put in issue all that can be proved thereunder.

Non-compliance with a condition of the policy providing that the insured would, if required, furnish a certificate of the magistrate or notary living nearest the place of the fire, is a matter of defense which must be specially pleaded.

Under a provision of the policy requiring that the proof of loss be "signed and sworn to" by the insured, the oath or a certificate thereof must be in writing.

A certificate of the oath which contains no venue, and does not state that the affiant made oath before the notary, is fatally defective, and the defect is not cured by an affidavit of the notary supplying the omissions, subsequently served upon the insurance company.

Where an insurance company enumerates specific objections to proofs of loss, it waives all defects not so enumerated.

A notice by the insurance company stating that the oath of each member of the insured's household owning property covered by the policy must be furnished,

notwithstanding the fact that the policy required the oath of the insured only, operates as a waiver of the insufficiency of the certificate of the oath of the insured already served.

Evidence that the insured notified the insurer that she objected to the appraiser appointed by it upon the ground that he was not "disinterested," and that the insurer, although having an office in the city where the insured lived and the fire occurred, made no response and did nothing in the matter of the loss for twenty-one days, at the end of which time the action was commenced, justifies the court in submitting to the jury the question whether the insurer had delayed for such an unreasonable length of time that it must be deemed to have abandoned the appraisal.

Where a policy covers "the property of the assured, or any member of the household," the insured may properly bring an action in her own name to recover the entire loss; in any event the objection that all the members of the household should be joined as plaintiffs is not available unless pleaded in the answer.

The defendant should never plead as a "defense" anything which is embraced within an issue raised by a denial. A defense can consist only of new matter, viz., matter outside of the issues which can be raised by a denial, and the burden of proof is on the defendant to make out a defense.

APPEAL by the defendant, The Western Assurance Company of Toronto, Canada, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 26th day of January, 1898, upon the verdict of a jury, and also from an order entered in said clerk's office on the 13th day of January, 1898, denying the defendant's motion for a new trial made upon the minutes.

The complaint alleges the insurance of the plaintiff by the defendant by its policy issued to her to the extent of $5,000 on household furniture and other personal property; its destruction and damage by fire to a greater amount than the said sum on March 29, 1896; that on April 9, 1896, the plaintiff duly served proofs of loss on the defendant; and then generally, "that she has complied with all the other conditions of the said policy on her part."

The answer is a general denial only.

The policy in so many words insures the plaintiff "on household furniture," including many enumerated heads or classes, "the property of the assured, or any member of the household, while contained in the" dwelling described, in the city of New York.

The policy provides that if fire occur the insured "shall give immediate notice of any loss thereby in writing to this company," and also within sixty days after the fire "shall render a statement to

this company, signed and sworn to by said insured," stating among other things "the interest of the insured and of all others in the property; the cash value of each item thereof and the amount of loss thereon;" and also, "if required," furnish a certificate of the disinterested magistrate or notary "living nearest the place of fire," stating that he has examined the circumstances and believes the insured has honestly sustained loss to an amount which he is to state therein.

The proofs of loss (served April 9, 1896) embrace complete lists of the articles damaged, their "sound value" being set down in a column under that head, and the "damages claimed" being set down in a second column so headed; and also of the articles destroyed, with their "sound value" set down under that head. No other figures are given therein. The household consisted of the insured and her husband and their four adult children, two sons and two daughters, and the said lists were divided into schedules showing the articles belonging to each member of the household. All of them signed the certificate at the end of such complete inventory to the correctness thereof. Prefixed to such inventory is the general statement of the insured required by the policy. - I+ refers to the inventory as showing the property damaged or destroyed and the amount of the loss. It is signed by the insured, and under her signature follows the following certificate of oath, not signed by her, and without venue, viz.:

"Personally appeared Mrs. Ann McManus, signer of the foregoing statement, who made solemn oath of the truth of the same.

"Witness my hand and official seal, this 8th day of April, 1896.

"MICHAEL A. BURDETT,
"Notary Public (134),
"N. Y. Co."

By letter of the company to the insured and her agents (adjusters) dated April 18, it notified the insured that "the papers offered as proofs of loss are defective," and "to serve new papers in proper form as follows," five objections being then enumerated, viz.:

"First. The statement prefixed to the schedules is not properly verified. There seems to be no venue and no affidavit signed by the insured, but merely a certificate of the notary that the insured 'made oath to the truth of the same.'"

The second objection was, substantially, that there was no statement of who were the persons claiming as members of the household, under that clause of the policy, nor as to the specific property claimed by each, nor as to their relationship to the insured; the third was that there was "no statement as to the place of residence of the notary who certifies to the loss," and it is insisted "that the residence shall be stated and also the fact that he is the notary 'living nearest' to the fire;" the fourth was that the schedules are not "verified," but merely have a certificate purporting to be signed by various persons. "We require that each schedule shall be duly verified by the person claiming to own the property. It must be sworn to be correct and to be his or her property; and the fifth was, "The schedules do not show the cost of each article as required by the policy."

The plaintiff's agents responded by letter dated April 22, saying, "we fail to discover any errors or omissions." To the first objection (that to the oath) they only say, "we refer you to the above-mentioned proof of loss." To the second they give the names and relationship of the members of the household, and point out that the schedules show the property of each; to the third they give the address of the notary, and say he was the one living nearest to the fire; to the fourth they point out that all the members of the household signed the certificate to the correctness of the schedules; and to the fifth they say the assured was unable to "positively state the exact cost of every article." The company responded by letter of April 30, insisting upon the objections made, and that the proofs of loss should be corrected to conform to them, and adding that "we shall stand upon our legal rights and reject the proofs already offered. You have ample time to file proper proofs and on our part we insist that you do so." The plaintiff's attorneys wrote the company on April 24, saying only that its letter of objections of April 18 had been referred to them, and that they would communicate in reference to it in a few days. On May 4 they simply wrote: "We trust that you will be advised to deal with the assured on a just and equitable basis without insistance upon purely technical and non-meritorious objections." The company answered on May 5 that this characterization of the objections "does not deprive them of their

full force or us of the right to insist upon compliance," and stated
that efforts of the attorneys to procure " prompt action " with regard
to them " will facilitate the settlement of your claim and will be
appreciated by us." About May 11 plaintiff's agents filed with
the company an affidavit by the notary (Michael A. Burdett) who
made the certificate of oath of the insured to the proofs of loss,
stating in substance that he was a notary public of the State of
New York, residing in the city of New York, and that on April 8
(the date mentioned in the said certificate) Mrs. Ann McManus, per-
sonally known to him as having made the proofs of loss, personally
appeared before him and subscribed the said proofs, " and was sworn
before the said Michael A. Burdett on the 8th day of April, 1896,
in the city and county of New York." By letter to the plaintiff's
attorneys, dated May 11, the company acknowledges receipt of this
affidavit, and says : " Detached statements in letters and papers do
not supply the omission. We have no 'proofs signed and sworn
to by the insured.' You claim that the insured are Ann McManus,
Mary A. J. McManus, Hannah McManus, Thomas McManus, Sr.,
Thomas W. McManus and Nicholas P. McManus, and certain sched-
ules claim that certain property covered by our policy belongs to
each. We insist that each one shall swear to the list claimed for
him as correct, and we demand that the oath shall be administered
and certified as required by law, so that an action may be based
thereon if found incorrect. We insist that you comply with the
requirements of our letter of the 18th of April, and if your claim
be just and honest, can see no reason for your attempted evasion."
It adds that unless the proofs of loss be " amended and perfected
we shall reject those formerly sent in. In fact, we do reject them,
and give you the opportunity to put in corrected proofs of loss if
you desire. Such proofs must be sworn to by each of the insured
in proper form as to the loss, value, cost and damage of each item
claimed." It also says that the company is willing to go into an
" immediate appraisal upon the distinct understanding that such
action shall not be construed as any waiver of our rights to proofs
of loss as demanded by us," and this reservation it repeated in sub-
sequent letters and kept good. By letter of May 13 plaintiff's
attorneys respond that " the proofs of loss as filed are certainly
sufficient ; " and also, " we regret to say that it seems to us utterly

impossible to meet your varying requirements, and having, as we believe, fully conformed to the requirements of the policy, which is the contract between the company and the assured, we can only express the hope that you may be advised to look at the matter from a different sandpoint, and pay the loss with that promptness which is characteristic of well-established and properly managed companies." By letter of May 14 the company says in response: "We beg to say, however, that we have never made but one set of objections to the proof of loss. We may say that these were forwarded to Mrs. McManus in care of her adjusters, Messrs. Sonnenfeld & Baird. In that letter we stated specifically just what we desired." This reference is to their said letter of April 18. No other corrections of the proofs of loss were made or attempted.

Annexed to the proofs of loss is a certificate by Notary Michael A. Burdett of the facts and tenor prescribed by the policy to be certified by the magistrate or notary living nearest the place of fire. He does not certify his residence by street and number, or that he was "living nearest" the place of fire, but only that he was "residing in New York city contiguous to the property" where the fire occurred.

The policy provides that if the insured and the insurer disagree as to the amount of loss, it shall be ascertained by "two competent and disinterested appraisers," one appointed by each, they to submit their differences to an umpire, who is to be selected by them before they begin the appraisal, the award in writing of any two of them to determine the amount of loss; and it also provides that "the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate and satisfactory proof of the loss having been received by this company in accordance with the terms of this policy."

Each party having appointed an appraiser (the insured on May 4 and the insurer on May 14) the insured through her agents objected to the company's appraiser by letter dated May 27 the only reason given being in the general words, "as he is not competent to act under the terms and conditions of your policy." By letter of June 3 the company stated that it was unaware of any reason why he could not act, and asked that the objections be specifically stated.

By letter of June 8 the agents of the insured stated the objections to be that the person named had acted as appraiser for the insurers "on numerous occasions, as well as for other companies, and is in fact dependent on insurance companies exclusively for a livelihood; and also that he was the "auctioneer, owner and manager" of a named company "that wrecks, assorts and disposes of property damaged by fire and taken by the insurance companies in order that their losses might be reduced thereby, being, and in fact is, an employee of insurance companies in general." No acknowledgment of or response to this letter having been sent, and nothing being done or proposed by the company, this action was begun on June 29, and no appraisal was had.

Each of the said objections to the proofs of loss made in the said letter of the company of April 18 and of the further objections that the action was prematurely brought before an appraisal, and also before the expiration of the sixty days after proofs of loss and ascertainment of the amount of loss, prescribed by the policy, and the objection that it did not appear that the certifying notary was the one living nearest the fire, was taken and insisted upon at the trial, in the motion to dismiss at the close of the plaintiff's case, and again at the close of the case, except the one that the relationship to the insured of the members of the household interested did not appear.

The plaintiff's counsel insisted as to each of these objections, that it could not be taken on the trial for not having been pleaded as a defense.

The defendant also moved to dismiss on the ground of variance between the complaint and the proof, in that only part of the property belonged to the plaintiff.

The court sent the case to the jury on the questions of fact whether the company waived the defect of the oath in the proofs of loss, whether its appraiser was disinterested, and whether it abandoned the appraisal; also on the question of damages.

*George A. Stearns*, for the appellant.

*Charles Wehle*, for the respondent.

Judgment and order affirmed, with costs, on the opinion of GAYNOR, J., rendered on motion for a new trial.

All concurred, except BARTLETT, J., not sitting.

The following is the opinion of GAYNOR, J.:

GAYNOR, J.:

There is a question of pleading. Compliance by the plaintiff with each of the provisions of the policy for the furnishing of proofs of loss, and for the ascertainment of the amount of loss by agreement or by appraisal, was a condition precedent to the plaintiff's right of action; and by the terms of the policy the company had sixty days after such compliance within which to pay. It follows that it was for the plaintiff to plead and prove such compliance. Under common-law pleading it was necessary for the plaintiff to particularly plead each condition precedent and compliance therewith, or a good reason or excuse for non-compliance, such as that the defendant waived or prevented compliance (1 Chit. Pl. [16th Am. ed.] 332–337; *Bogardus* v. *N. Y. Life Ins. Co.*, 101 N. Y. 328). But under our system of pleading such particularity is not necessary, a general allegation that the plaintiff "duly performed all the conditions on his part" sufficing to enable proof to be made of compliance or of excusable non-compliance (Code Civ. Proc. § 533). The complaint has this general allegation. The answer, which is a general denial only, was sufficient to put in issue all that could be proved under the complaint. A general denial is always the scientific and sufficient way to put in issue all that the plaintiff has necessarily pleaded and must prove, though it seems to be growing very much out of mind in the profession. The defendant should never plead as a "defense" anything which is embraced within the general issue raised by a general denial. A defense can consist only of new matter, viz., matter outside of such general issue (Code Civ. Proc. § 500). If pleaders would bear in mind that the burden of proof is on the defendant to make out a "defense," they would be less prone to plead as defenses facts which are not defenses, but within the general issue. Sometimes the courts take them at their word, and throw the burden of proof on them for their so-called defenses, and thus enable the plaintiff to prevail, as in *Whitlatch* v. *The Fidelity Co.* (149 N. Y. 45).

But the furnishing of the certificate of the magistrate or notary living nearest the place of the fire, provided for in the policy, was not such a condition precedent. The plaintiff was not obliged to furnish it unless "required" to by the company. Such is the lan-

guage of the policy. She therefore did not have to prove the nega-
tive that she was not so required; or the affirmative that she was
and complied; but it was for the company to plead as a defense the
condition precedent to its right to such certificate, viz., that it called
for it of the plaintiff, and then that she failed to furnish it. The
question of compliance with this provision of the policy being there-
fore not in issue, no further note is taken of it.

The requirement of the policy that the proof of loss shall be
"signed and sworn to" by the insured means, by general under-
standing and practice in matters requiring such verification, that
the oath, or a certificate thereof, shall be in writing. This present
certificate does not state that the affiant made oath before the notary.
This defect seems to be fatal to its sufficiency (Proff. Not. § 68;
Smart v. Howe, 3 Mich. 590). But the company did not include it
among its grounds of objection, and thus excluded and waived it.
The only objections specified on the head of the oath were that there
was "no venue and no affidavit signed by the insured." There being
no requirement in the policy that the insured should sign the affidavit,
the latter is untenable (Proff. Not. § 67; Millius v. Shafer, 3 Den.
60). But the former was good, absence of a venue making an affi-
davit a nullity (Thompson v. Burhans, 61 N. Y. 52; Proff. Not.
§ 66). The affidavit of the notary subsequently made and served
on the company did not supply the lack of a validly certified oath
by the insured. It was her oath in writing, or a valid certificate
thereof, which the company was entitled to. The proofs of loss
were thus fatally defective, and the plaintiff may not prevail unless
such defect were waived by the company. It now seems to me
as matter of law that it was. After stating in its letter of April
18th the said two objections to the certificate of oath, it further
stated therein that it required that each schedule should be sworn
to by the person claiming to own the property contained in it.
This was notice that the oath of the insured would not be accepted
as sufficient, but that there must be five oaths, viz., one by each
member of the household to the schedule of his or her prop-
erty; notwithstanding that the policy required the oath of the
"insured" only. By the said letter it demanded that the insured
"serve new papers in proper form," and prescribed the form, which
included the said five oaths. By its letter of May 11th the com-

pany again explicitly exacted this. It said: "We insist that each one shall swear to the list claimed for him." It added that it rejected the proofs of loss sent in, and gave opportunity to put in corrected proofs, saying that such proofs must be sworn to "by each of the insured in proper form," meaning by each member of the household. The company thus gave notice that a tender of proofs of loss verified as required by the policy, viz., by the oath of the insured, would not be accepted as sufficient, but that the proofs must be verified by the five members of the household in order to be so accepted. It thereby set at naught and dispensed with the provision of the policy for proofs of loss, and set up a new requirement instead. The rule would seem to be the same here as in the case of obligations to tender performance of contracts generally. If notice be given in advance that the tender, whether of money or of other performance, will not be accepted, it need not be made (*Crist* v. *Armour*, 34 Barb. 378; *Burtis* v. *Thompson*, 42 N. Y. 246; *Bunge* v. *Koop*, 48 id. 225; *Howard* v. *Daly*, 61 id. 362; *Baumann* v. *Pinckney*, 118 id. 604). It always excuses the performance of a condition precedent if it be hindered or waived by the other party (*Langdon* v. *Burrill*, 21 Vt. 466). One who declares to the other party to a contract his intention not to abide by it commits thereby a breach upon which action may be brought at once (Bish. Cont. § 1428). And in insurance law, a denial by the insurer of liability in any event, is held to operate as a waiver of the provisions requiring notice and proofs of loss, and submission to arbitration (Joyce Ins. §§ 3257, 3373). A notice in advance that proofs of loss made in a form different to that required by the policy will be insisted on, and that proofs made in the form required by the policy will be rejected as insufficient, seems to present an equally clear case of waiver.

It is insisted by the defendant that whether the company had delayed so long that it must be deemed to have abandoned the appraisal or arbitration was a question of law for the court, and that it was error to submit it to the jury. Being informed by the insured by letter on June 8th of the specific reasons why she objected to the appraiser it had named as not "disinterested," it made no response for twenty-one days and did nothing meanwhile in the matter of the loss, though it had its office and transacted busi-

ness in the same city where the insured lived and the fire occurred; whereupon this action was brought on June 29th. It seems to me it was not error to submit the question to the jury. To be sure, it is often repeated that what is a "reasonable time is, when there is no dispute as to the facts, a question of law for the court" (*Hedges* v. *Hudson River R. R. Co.*, 49 N. Y. 225; *Roth* v. *Buffalo, etc., R. R. Co.*, 34 id. 553; 67 id. 277). Nevertheless, the rule is not generally so understood, especially in the trial of causes, but is every day taken and stated to be, that when the facts are undisputed they present a question for the court, *unless different inferences may be reasonably drawn from them*, in which case the question is for the jury. Moreover, the undisputed fact in this case of the delay of twenty-one days had to be considered in the light of the society of facts in which it was found. The delays which had already occurred, and the difficulty of preserving any longer the remains and evidences of the goods damaged and destroyed, bore directly on the question of whether it was an undue delay.

The plaintiff was not obliged to go into an appraisal before an arbitrator appointed by the company who was not disinterested and unbiased, and the evidence on that head presented a question of fact for the jury. Having found against the competency of the arbitrator, the jury then had before it properly the question of abandonment of the arbitration.

The action seems to be properly brought in the name of the insured alone for the entire loss. The policy in effect recognizes her as taking the insurance not only for herself individually, but as trustee for the members of her household, and this enables her to recover the entire loss (*Stillwell* v. *Staples*, 19 N. Y. 401; *Waring* v. *Indemnity Co.*, 45 id. 606). At all events, if the rather obscure objection made on this head, in the motion to dismiss for variance, be understood as an objection that all interested should have been joined as plaintiffs (*Boynton* v. *Ins. Co.*, 16 Barb. 254; *Winne* v. *Niag. Ins. Co.*, 91 N. Y. 192), it is unavailable for not having been pleaded in the answer (Code Civ. Proc. §§ 498, 499).

There is no requirement in the policy that the proofs of loss should state the cost price of the articles, and the company had no right to make the objection on that head. The requirement is to state " the cash value of each item thereof and the amount of loss

thereon." The inventory which the insured is required by the policy to make "forthwith" after the fire, "stating the quantity and cost of each article and the amount claimed thereon," is confined by the terms of the policy to damaged articles, and does not embrace articles totally destroyed ; and there is no requirement that it be made part of the proofs of loss.

The motion for a new trial is denied.