Louis Jacoby, Plaintiff, *v.* Ætna Casualty and Surety Company of Hartford, Conn., Defendant.*

City Court of New York, Trial Term, New York County, October 6, 1936.

---

* Affd. by Appellate Term, First Department, without opinion (N. Y. L. J. April 2, 1937, p. 1626); leave to appeal to Appellate Division denied by Appellate Term (N. Y. L. J. May 11, 1937, p. 2361); leave to appeal to Appellate Division denied by Appellate Division (N. Y. L. J. June 12, 1937, p. 2969).

ACTION on " Depositor's and /or Commercial Forgery Bond."

*Bernard Fliashnick,* for the plaintiff.

*John Tilney Carpenter,* for the defendant.

NOONAN, J. Plaintiff is a tobacconist selling cigars, cigarettes and tobacco at retail in a store located at 62 West Twenty-sixth street, borough of Manhattan, New York city. In the rear of the store, separated from the front by a wire partition, he manufactures a cigar called the Midland Club, which he sells by the box. In November, 1934, he received from the defendant insurance company, on payment of the stipulated premium, a bond of indemnity which protected him for certain losses as therein specified which might be sustained through the receipt in good faith in exchange for property sold and delivered, of checks or drafts bearing a forged signature of the maker or indorser or a forged certification. This bond became effective November 15, 1934, and was in force for a year. It is called a " Depositor's and /or Commercial Forgery Bond."

Since the action is based on this bond its provisions so far as material read: " Section B, To indemnify the Insured against any losses, not exceeding in the aggregate the amount hereinafter set forth, which may be sustained *through the receipt by the Insured, in good faith,* during the term of this bond, at any of the Insured's offices covered under Indemnity Section B, *in exchange for property sold and delivered* and /or in exchange for services rendered, of any check or draft drawn upon or by any Bank, or of any check or draft drawn by any corporation upon itself, or of any check or written order or direction to pay a sum certain in money, drawn by any public body upon itself, or of any warrants drawn by any public body:

" (1) Upon which the signature of the maker or drawer (an existing person, firm or corporation), or the certification or acceptance of the drawee shall have been forged, and /or

" (2) Upon which any endorsement shall have been forged; and /or

" (3) Which shall have been raised or altered in any other respect, provided it is not drawn in lead pencil which is not indelible.

" *The amount of the Insured's losses under Indemnity Section B on account of any instrument so received by the Insured and the amount of the Company's liability on account of such instrument shall be deemed to be 75% of the insured's pecuniary interest in the instrument, such pecuniary interest to be determined by the following:*

" (a) *The amount paid for the property sold and delivered, as fixed at the time sold, and/or*

" (b) *The amount paid for the services rendered, as fixed at the time rendered, and*

" (c) *The amount of cash, if any, delivered against such instrument, over and above* (a) *and/or* (b) *immediately preceding.*" (Italics mine.)

Another provision of the bond contained the following:

" 11. *Upon discovery by the insured of any fact or circumstance indicating a probable loss hereunder the Insured shall, as soon as is practicable after the discovery, notify the Company in writing at the Company's Home Office, giving all details then known to the Insured. The Insured shall within sixty (60) days after such discovery file with the Company a sworn proof of claim which shall include, whenever possible, the instrument which is the basis of such claim. Any loss for which the Company may be liable shall be payable immediately upon receipt by the Company of sworn proof of claim as provided above.*" (Italics mine.)

The present action is brought to recover $1,088.10, or seventy-five per cent of the amount of a check for $1,450.82 which on March 9, 1935, the plaintiff cashed for one Harry Wolter, whose real name was John B. Dennis. This check was brought to the plaintiff while in his store. It was dated March 7, 1935, and purported to be signed by one Charles B. Bloom, payable to the order of Harry Wolter in the sum of $1,450.82 " in full for note." On the back of the check appear the words, " In payment of note dated February 1, 1934, in the sum of $1,400 and interest from August 1, 1934, to March 7, 1935." The name " Harry Wolter " was also indorsed on the back of the check. This check was drawn on the Federal Trust Company of Newark, N. J., and on the front of the check there appears a purported certification by that bank. Plaintiff deposited the check for collection in the Public National Bank and Trust Company of New York. Six days thereafter plaintiff was notified by the collecting bank that the maker had no account with the drawee bank and that the certification was forged. It was stipulated at the trial that the rejection of the check by the drawee bank was valid for the reasons stated by it.

The issues in this case, which was tried before the court without a jury, are twofold. Defendant contends, first, that the plaintiff's alleged loss does not fall within the coverage of the bond in that the plaintiff was engaged in a check-cashing business for profit to himself and that, consequently, there was no compliance with the terms of the bond since the plaintiff's failure to receive the money in the cashing of the check of $1,450.82 was not " sustained through the receipt, in good faith * * * in exchange for property sold and delivered." Another point made by the defendant is that the plaintiff failed to give the defendant a proper proof of loss within the terms of the policy, which obligated the plaintiff to notify the defendant company at its home office, in writing, as soon as practicable after the discovery by the insured of any fact or circumstance indicating a probable loss " giving all details then known to the Insured " and within sixty days after such discovery to file with the defendant " a sworn proof of claim."

In my opinion both objections to a recovery in this action must prevail. When the check for $1,450.82 involved in the action was cashed, plaintiff testified that he deducted $29.82 and gave the difference to " Wolter " in cash. This deduction was made up of twenty-eight dollars for 200 cigars of the Midland Club make at fourteen cents apiece, and the balance represented the price of a carton of cigarettes. Dennis, alias Wolter, testified for the defendant and said that when the check was cashed plaintiff told him that, as the check was drawn on a New Jersey bank, he would charge him two per cent of the amount of the check, or twenty-nine dollars, for cashing it. Wolter denied that he received any cigars from the plaintiff at the time of the cashing, and testified that he did not smoke cigars. Wolter said that the only merchandise received by him was a carton or two of cigarettes, which probably represents the eighty-two cents difference. The testimony of Wolter as to the extent of the merchandise sold is more credible.

Plaintiff admitted on cross-examination that he charged a premium for cashing out-of-town checks, and the deduction of twenty-nine dollars is exactly two per cent of the amount of the check. O'Keefe, the defendant's adjuster, testified that plaintiff told him that he had sold fifty dollars worth of cigars to Wolter. All of this evidence shows clearly that the plaintiff was more interested in deriving a profit from cashing the check than in making a sale of merchandise. The only merchandise delivered to Wolter was some cigarettes. The plaintiff's story that he sold to Wolter 200 cigars is not true. This conclusion is further supported by the fact that in his complaint (paragraph

eighth) the plaintiff alleged that at the time he cashed the check he gave Wolter $1,450.82, the full amount of the check. If he had sold merchandise of any substantial amount he would have so alleged it. That the real transaction between the plaintiff and Wolter was the cashing of the check and not a *bona fide* sale of merchandise is further shown by the correspondence between the plaintiff and the defendant with reference to the plaintiff's claim under the policy. Nowhere in any of the letters sent by the plaintiff is there anything said about a sale of merchandise by the plaintiff to Wolter.

The instance of the check of $1,450.82 was not the first transaction which the plaintiff had with Wolter. In December, 1934, he cashed a check for $4,500 for Wolter and charged him either one per cent or three-quarters of one per cent premium for cashing it. In February, 1935, he again cashed another check for $2,905, and exacted a premium of twenty-nine dollars, or one per cent of the check. In both instances a carton or two of cigarettes was delivered to Wolter as a cover for the transaction. A carton contains ten packages of cigarettes. From all of the evidence it seems clear that the cashing of the check involved in this suit was not a *bona fide* transaction within the meaning and intent of the insurance policy. The plaintiff was protected solely against a loss which might be sustained through the receipt by the plaintiff, in good faith, in exchange for property sold and delivered, of forged or raised checks. The defendant intended to insure only against damage suffered in a sale of merchandise in an honest and genuine business transaction. Plaintiff was engaged in a check-cashing business, and the bond did not cover such a business. The test is not the plaintiff's lack of knowledge as to the forgery. There is no proof that he knew that the check for $1,450.82 was a fraud, but there is unmistakable evidence that he was not acting in good faith within the terms of the policy when he cashed it for Wolter. The small amount of merchandise delivered to Wolter was merely a cover for a check-cashing business, from which the plaintiff derived a profit.

There is great force also in defendant's other contention that a proper proof of loss was not filed by the plaintiff. The policy required written proof in detail of the facts and circumstances surrounding the loss. A sworn proof of claim was also a necessary condition precedent to recovery. The only proof of loss submitted by the plaintiff was the letter of April 15, 1935, which in effect was merely a notice of claim to the defendant that he had cashed a check for $1,450.82 drawn on the Federal Trust Company of Newark, N. J., which was returned by his bank with a notation

that the certification of the check was a forgery. This notice was not sworn to, but merely acknowledged. It did not contain the details of the transaction relating to the cashing of the check. The policy required that the proof of claim be under oath. The acknowledgment of the notice of claim was not the same as if he had sworn to it. (*Hardman* v. *Sage*, 124 N. Y. 25; *McManus* v. *Western Insurance Co.*, 43 App. Div. 550; *Brown* v. *Smith*, 3 H m, 408; affd., 80 N. Y. 650.)

There was no waiver by the defendant of this essential requirement of the policy. Plaintiff did not plead a waiver in his complaint as he was obliged to do if he intended to rely upon it. The proof does not establish a waiver, either express or implied. The defendant was not called upon to tell the plaintiff that his notice of claim was defective. It was for the plaintiff to see to it that he complied with all essential conditions of the policy. That the defendant did not recognize the plaintiff's letter of March twenty-seventh as a proper notice of claim is evident from its reply letter of April first, in which was said: " We have at this time stopped our further investigation, for we cannot say whether or not it is your firm desire to make a definite claim under our policy for the  *  *  *  further check mentioned in your communication in the amount of $1,450.82. Should we be told by you that it is your desire to make a firm and definite claim, then you must appreciate that our investigation will be conducted so as to secure full and complete facts surrounding the checks so that a very complete record may be made for us to take up with the District Attorney of New York County and the Department of Justice, United States, particularly where National Banks are involved."

Plaintiff was informed by this letter that if it was his intention to make a definite claim he should proceed in accordance with the policy requirements. In its letter of April 18, 1935, the defendant company referred to its letter of April first and stated that it denied liability with respect to the check for $1,450.82. Both letters of the defendant are plain in their import for complete information as to whether plaintiff was making a claim, and for the full details thereof. The failure to comply with the conditions of the policy with respect to a proper written proof of claim under oath in itself bars any recovery. (*Wachtel* v. *Equitable Life Assur. Soc.*, 266 N. Y. 345; *City Bank Farmers Trust Co.* v. *Equitable Life Assur. Soc.*, 246 App. Div. 256.)

Judgment must, therefore, be awarded to the defendant dismissing plaintiff's cause of action on the merits. Ten days' stay of execution and thirty days to make a case.